632 A.2d 1037

Anita BIRENBAUM, widow of decedent,
Paul Birenbaum, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (ENGLISH
GREENHOUSE PRODUCTS CORP.), Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 20, 1992.

Decided Oct. 20, 1993.

180

Francis T. Sbandi, for petitioner.

Richard D. Harburg, for respondent.

Before CRAIG, President Judge, COLINS, J., and LORD, Senior Judge.

COLINS, Judge.

Anita Birenbaum (claimant), as the widow of Paul Birenbaum (decedent), petitions for review of a January 29, 1992 decision and order of the Workmen's Compensation Appeal Board (Board) which affirmed the decision of the referee to deny claimant's fatal claim petition under The Pennsylvania Workmen's Compensation Act (Act).[1] We affirm.[2]

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

2. This is a tragic case in which decedent's depressive illness and compulsive attitude toward work ultimately combined to lead to his death by suicide. This case also illustrates the difficulties of determining whether certain psychiatric injuries are compensable under the Act.

Decedent worked for English Greenhouse Products Corporation (employer) as a salesman from October, 1982 until October 17, 1984. Initially, decedent worked at employer's Camden, New Jersey showroom where his sales record was satisfactory or better. In the autumn of 1983, employer opened a showroom in King of Prussia, Pennsylvania, and added a display area at the Bloomingdales store in King of Prussia. Decedent was placed in charge of overseeing both the showroom and the display area.

Despite decedent's hard work, which often included sales calls on evenings and weekends, employer's King of Prussia business failed. In October of 1984, employer closed the showroom and the Bloomingdales' display in King of Prussia. Employer closed other retail showrooms around the country during 1984 and 1985 and concentrated on distributing its product in commercial outlets. On October 17, 1984, decedent was fired from his job. Ten days after losing his job, decedent was hospitalized for depression and remained in the hospital until January 11, 1985. Decedent relapsed and was readmitted to the hospital from February 7 to February 14, 1985. Decedent died as a result of suicide on March 15, 1985.

In February of 1986, claimant filed a petition alleging that decedent's depression and suicide were caused by work-related stress. The referee conducted a series of hearings from 1986 to 1990; at which each party presented medical testimony.

Decedent's treating psychiatrist, Stephen Weinstein, M.D., (Dr. Weinstein), testified to the following facts: that decedent experienced periods of depression as early as 1977; that he began treating decedent in the early 1980's; that decedent had a compulsive personality and could be characterized as a "workaholic" whose feelings of self-esteem and outlook on life were controlled by his success or failure at work; that decedent had been employed in approximately 50 different sales positions over the last 30 years; that numerous other stresses affected decedent, including a deteriorating marriage as well as the serious illness of his oldest daughter; and that the closing of the King of Prussia showroom and the loss of his

position with employer played a significant role in the worsening of decedent's depression and his eventual suicide.

In opposition to claimant's petition, employer presented the testimony of Harold Byron, M.D., (Dr. Byron), a board certified psychiatrist. Dr. Byron testified that in his opinion decedent suffered from major affective disorder and unipolar depression,[3] both of which were recurrent and severe. Dr. Byron further testified that decedent's illness had a biogenetic component which had been treated with antidepressant drugs over a long period of time. Dr. Byron concluded that decedent was not exposed to any abnormal working conditions and that decedent's suicide was the outcome of his depressive illness.

The referee found Dr. Byron's testimony to be credible and convincing and adopted this testimony as fact. The referee also found some aspects of Dr. Weinstein's testimony to be credible but found that while the decedent's loss of employment played a significant role in the worsening of his depression, the suicide was ultimately caused by the biological depressive illness that was aggravated to a great extent by decedent's various family problems and decedent's perception of work and its role in his life.

The referee concluded that claimant failed to sustain her burden of proving a compensable injury because decedent's suicide was a subjective reaction to normal working conditions. Claimant appealed to the Board, but the Board affirmed the referee's decision. Claimant now appeals to this Court for review of the Board's decision and order.

Our scope of review is limited to whether constitutional rights have been violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Vinglinsky v. Workmen's Compensa-*

---

**3.** Unipolar or "monopolar" depression is a term which indicates that the patient suffers from a history of depression only. Bipolar depression includes a history of both depression and periods of a euphoric sense of well-being and omnipotence called "mania." Robert M.A. Hirschfeld, M.D., and Frederick K. Goodwin, M.D., *Mood Disorders,* Chapter 13, in The American Psychiatric Press Textbook of Psychiatry, 403, 403–06 (John A. Talbott, M.D., et al. eds., 1988).

*tion Appeal Board (Penn Installation),* 139 Pa.Common-
wealth Ct. 15, 589 A.2d 291 (1991). Claimant raises two issues
on appeal.

## I. WERE THE REFEREE'S FINDINGS OF FACT
## SUPPORTED BY SUBSTANTIAL EVIDENCE?

Claimant disputes the referee's finding that the only work-
related factors to affect decedent were the loss of his job and
his own perception of work and its role in his life. The
referee's Finding of Fact No. 12 stated, in pertinent part: "I
find that while losing his job played a significant role in the
worsening of [decedent's] depression the ultimate causations
were at least somewhat biological and aggravated to a great
extent by various family problems as well as decedent's per-
ception of work and its role in his life."

If the Board takes no additional evidence, the refer-
ee is the ultimate fact finder and his findings will not be
disturbed when they are supported by substantial, competent
evidence. *Levering v. Workmen's Compensation Appeal
Board (Buck Company, Inc.),* 153 Pa.Commonwealth Ct. 533,
621 A.2d 1178 (1993). Substantial, competent evidence exists
if the record contains sufficient relevant evidence as a whole
which a reasonable mind might accept as adequate to support
a conclusion. *Id.*

Claimant argues that Finding of Fact No. 12 is not
supported by substantial evidence. Claimant also alleges that
the increased work responsibilities decedent undertook as
employer's business was failing aggravated or accelerated
decedent's injury. However, the testimony of Dr. Weinstein,
claimant's medical expert, does not support this argument.
When questioned about the cause of decedent's suicide and
about factors which exacerbated decedent's depression, Dr.
Weinstein did not identify increased work responsibilities or a
change in working conditions as a factor. Dr. Weinstein
testified repeatedly that decedent measured his self-worth by
his success on the job and that, when not working, decedent
felt worthless as a person. Dr. Weinstein identified employ-

er's firing of decedent as the only work-related substantial factor in causing the suicide, as his following testimony on direct examination by Francis T. Sbandi, Esquire, demonstrates:

> Q. Doctor based upon the history that you have taken, your course of treatment, do you have an opinion based upon a reasonable degree of medical certainty as to the cause of Mr. Birenbaum's suicide?

> A. Mr. Birenbaum was overwhelmed by the prospect of not working, of being unemployed, felt that he had no value if he had no job, was not able to recognize any other redeeming features of himself other than his ability to work incessantly, and without work he felt he was nothing.

> Q. Doctor, do you have an opinion, based upon a reasonable degree of medical certainty, as to what caused the condition concerning his thoughts of work and that type of thing?

> A. As I indicated in one of the previous histories from his hospitalization, he had become enamored with wealth when he moved from South Philadelphia to the Overbrook section, and he tied all of his motivation to gain wealth to his experiences in his teenage years of what people who had wealth lived like. He aspired to meet those goals from very early on and was unable to change his course.

> Q. Doctor, did the loss of his job in October of 1984 have any effect on his mental condition?

> A. It aggravated his mental condition. He was depressed at the time that he lost his job, and he became despondent and hopeless after losing it.[4]

. . . .

> Q. And upon the closing of that store, Mr. Birenbaum lost his job. Do you have an opinion as to what effect that had on Mr. Birenbaum?

4. See the April 18, 1988 deposition of Dr. Stephen Weinstein at pages 50–51.

A. Mr. Birenbaum was hospitalized shortly after losing his job. As I indicated before, he was despondent as a result of his losing his job and as I also mentioned before, he was living in fear of the possibility of being unemployed. So that I believe that the closing of the greenhouse and the resultant unemployment played a significant role in the worsening of his depression and eventual hospitalization and suicide.[5]

We conclude that Dr. Weinstein's testimony clearly constitutes substantial evidence that supports the referee's finding that the loss of decedent's job, rather than any increased work responsibilities, played a significant role in aggravating decedent's medical condition.

## II. WAS DECEDENT'S MENTAL ILLNESS A SUBJECTIVE REACTION TO NORMAL WORKING CONDITIONS?

Claimant argues that the referee committed an error of law, when he based his finding that no abnormal working conditions existed on incompetent testimony by employer's medical expert. The referee's Finding of Fact No. 13 states in part: "Dr. Byron was further of the opinion that there were no abnormal working conditions present in decedent's work environment and that his suicide was the outcome of the decedent's depression. I find the testimony of Dr. Byron to be credible and adopt it as the facts of this case." We disagree with claimant's position.

The type of injury alleged by claimant is of the category recognized by this Court as one of psychological stimulus causing a psychiatric injury, commonly referred to as a mental/mental injury case. Because of the difficulty of obtaining credible evidence in such cases, the claimant's burden of proof is quite high. *Lukens Steel Company v. Workmen's Compensation Appeal Board (Price),* 149 Pa.Commonwealth Ct. 177, 612 A.2d 638 (1992).

5. *Id.* at page 54.

In *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990), our Supreme Court adopted this Court's analysis in *Russella v. Workmen's Compensation Appeal Board (National Foam Systems, Inc.)*, 91 Pa.Commonwealth Ct. 471, 497 A.2d 290 (1985), *petition for allowance of appeal denied*, 516 Pa. 637, 533 A.2d 95 (1987), and established what is the current standard for determining whether a claimant has a compensable psychiatric injury. *Martin* stated that in order to meet the burden of proof to recover workmen's compensation benefits for a psychiatric injury, a claimant "must prove by objective evidence that he has suffered a psychiatric injury and he must prove that *such injury is other than a subjective reaction to normal working conditions.*" *Martin*, 523 Pa. at 519, 568 A.2d at 164–65 (emphasis added).

 The determination of whether an employee was exposed to normal or "other than normal" working conditions is a mixed question of fact and law subject to review by this Court. *Jeanes Hospital v. Workmen's Compensation Appeal Board (Miller)*, 141 Pa.Commonwealth Ct. 308, 595 A.2d 725 (1991), *petition for allowance of appeal denied*, 532 Pa. 648, 614 A.2d 1144 (1992). Because of the highly subjective nature of psychiatric injuries, the cause of the injury must be specifically identified, especially where an employee has an existing character disorder which makes him excessively vulnerable to stress and psychological difficulties. *Lukens Steel.*

The referee, in Finding of Fact No. 12, made a specific finding as to what caused decedent's psychiatric injury: "I find that while losing his job played a significant role in the worsening of [decedent's] depression the ultimate causations were at least somewhat biological and aggravated to a great extent by various family problems as well as decedent's perception of work and its role in his life."

 The referee's finding identifies two work-related factors that caused or aggravated decedent's psychic injury: (1) Decedent's perception of work and its role in his life; and (2) the loss of his job. Applying the *Martin* standard, the issue is whether either of these factors can support a conclusion that

decedent's illness was "other than a subjective reaction to normal working conditions." After reviewing the record in this case, and after reviewing the case law of this Commonwealth, we must conclude that decedent's injury and subsequent suicide were the result of his subjective reaction to normal working conditions.

■ First, decedent's feeling overwhelmed by the prospect of not working and his perception that he had no value if he had no job, as well as his inability to recognize any other positive personal qualities other than his ability to work incessantly, were decedent's subjective reactions to his employment. Decedent's work-related stress resulted from decedent's subjective compulsion with work and decedent's fear of the possibility of being unemployed. It is well established that the fear of losing one's job is a normal working condition. *Calabris v. Workmen's Compensation Appeal Board (American General Companies)*, 141 Pa.Commonwealth Ct. 405, 595 A.2d 765 (1991); *Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corporation)*, 87 Pa.Commonwealth Ct. 436, 487 A.2d 477 (1985). Moreover, in *Martin*, our Supreme Court held that work-related stress experienced by an employee who committed suicide was not compensable, where the evidence supported a finding that it was the employee's failure to meet self-imposed expectations and his perception of success which caused him to take his life.

■ Second, it is well-established that decedent's loss of his job is also a normal working condition. In *Kemp v. Workmen's Compensation Appeal Board (Elkland Electric Company Inc.)*, 121 Pa.Commonwealth Ct. 23, 549 A.2d 1365 (1988), *petition for allowance of appeal denied*, 523 Pa. 652, 567 A.2d 655 (1989), this Court held that an employee's being laid off because of modernization efforts by the employer was a normal working condition and did not provide a basis for workmen's compensation benefits. More recently, this Court in *Mele v. Workmen's Compensation Appeal Board (Uniontown Hospital)*, 155 Pa.Commonwealth Ct. 65, 624 A.2d 738 (1993), held that employer's elimination of a claimant's job

functions, which placed claimant's employment status in jeopardy, was a normal working condition. This Court stated in *Mele:*

> Here, we agree with the Board that Claimant failed to establish that her disability was other than a subjective reaction to normal working conditions. In the every day workplace, employees as here are constantly faced with job changes and even with lay-offs because of changing work procedures or economic conditions. A great number of these changes, although understandably traumatic for the individuals directly affected, can hardly be characterized as anything other than 'normal,' and are compensated, if at all, by unemployment compensation rather than workmen's compensation.

*Id.* at 71, 624 A.2d at 741. The fear of losing one's job and even, ultimately, the actual loss thereof, are working conditions associated with almost any employment situation. Therefore, we must conclude that decedent's psychiatric injury was the result of a subjective reaction to normal working conditions. If the work-related stress that produces a mental disability is the result of a subjective reaction to normal working conditions, it is not compensable. *Martin; Calabris.*

Accordingly, the Board's decision and order are affirmed.

## ORDER

AND NOW, this 20th day of October, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.