579 A.2d 1378

**John P. CADDEN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 1, 1990.

Decided Sept. 17, 1990.

Thomas F. McDevitt, with him, Vatche Kaloustian, Thomas F. McDevitt, P.C., Philadelphia, for petitioner.

Stephen A. Sawyer, Deputy City Sol., for respondent, City of Philadelphia.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

John P. Cadden (Claimant) a former fire fighter for the City of Philadelphia (City) appeals the order of the Workmen's Compensation Appeal Board (Board) which reversed the referee's award of benefits to the Claimant for a psychiatric disability. The referee determined that the Claimant suffered a compensable injury related to his employment under Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L.

736, *as amended,* 77 P.S. § 411. The Claimant presents for our consideration the issue of whether or not he met his burden of proving that:

(a) He suffered a psychic injury.

(b) The psychic injury was causally related to his employment.

(c) The psychic injury was more than a mere subjective reaction to normal working conditions.

The referee found the following relevant facts:

1. On [October 9, 1985], defendant employed claimant as a fire fighter at an average weekly wage of $529.12.

2. On October 9, 1985, claimant became totally disabled due to an acute, moderately severe,[1] depressive disorder precipitated by claimant's employment.

3. Claimant testified that he commenced employment as a fire fighter with defendant in 1959. In 1976, he was transferred to defendant's emergency technician program. Claimant testified that while performing the technician job he suffered anxiety and had problems sleeping. He was involved in rescue missions involving heart attacks, suicides, car accidents, shootings and homicides. Claimant testified that victims and families of victims often blamed him for deaths when the rescue squad arrived moments too late. He said family members of victims often had to be restrained from attacking him, because the rescue squad was held accountable for any misfortune. He testified to being abused, cursed at, and threatened by victims and family members of victims. Claimant testified that because of his work conditions, he went to work in fear and had to take Librium and Trival, prescribed by Dr. Evans.

4. Claimant testified that eventually he was sent by his doctor to a psychiatrist, Dr. Weinberg, and that Dr. Weinberg contacted defendant to release him from rescue

---

1. We note that the words "acute, moderately severe" as used in this finding are inapposite. We assume the referee means acute *to* moderately severe. However, the difference is of no consequence to the outcome of our decision.

work due to his mental condition. He was transferred from the rescue squad in 1981, after being released by Commissioner Rizzo due to Dr. Weinberg's reports and was assigned to Engine Company sixty-nine but was unable to drive due to panic attacks he suffered.

5. In September of 1984, claimant was ordered back to the rescue squad. Claimant showed his Battalion Chief a report showing he had been put off the rescue squad for medical reasons, *but he was still ordered back to work on the rescue squad.* He requested through his supervisor to see the Commissioner but said request was denied.

6. Claimant testified that when he was ordered to return to the rescue squad he again experienced anxiety and sleeplessness which he still experiences. He remained with Engine sixty-nine but was advised by his doctor to leave defendant's employment which he did on October 9, 1985. Claimant testified that he just could not work anymore due to exhaustion, dizziness, fainting, and feelings of panic. Claimant testified that he is currently under psychiatric and psychological treatment and is taking Zanax and Desuril. (Emphasis added.)

Based upon the evidence presented, the referee concluded that the Claimant sustained his burden of establishing that he suffered a work-related emotional disorder which entitled the Claimant to benefits under the Act. The referee's decision was reversed by the Board because the Board found that there was no evidence presented by the Claimant to prove an "abnormal" working condition. We affirm.

██ Pennsylvania has adopted an objective test for determining whether a psychic injury is compensable. When there is no physical injury as precursor to the psychic injury, the claimant must prove either (a) that actual extraordinary events occurred at work which caused the trauma and these specific events can be pinpointed in time, *Thomas v. Workmen's Compensation Appeal Board,* 55 Pa.Commonwealth Ct. 449, 423 A.2d 784 (1980), or (b) that abnormal working conditions over a longer period of time caused the psychic injury. *Pate v. Workmen's Compensa-*

*tion Appeal Board (Boeing Vertol Company)*, 104 Pa. Commonwealth Ct. 481, 522 A.2d 166 (1987), *cert. denied*, 484 U.S. 1064, 108 S.Ct. 1025, 98 L.Ed.2d 989 (1988). In *Bevilacqua v. Workmen's Compensation Appeal Board*, 82 Pa.Commonwealth Ct. 511, 475 A.2d 959 (1984), this Court held that a change in responsibilities at work may constitute abnormal working conditions but this type of case is fact sensitive and generally requires a determination by the fact finder as to whether or not, under the particular facts of the case, an internal change in employment creates an abnormal working condition.

The Claimant here argues that the change in responsibilities which took place in the Philadelphia Fire Department when it instituted its emergency squad in 1976 was an abnormal working condition which he had proved that he could not endure, and when emergency squad duties were required of him for a second time, in 1984, it caused him psychic injury. In considering this issue, we note that the Claimant joined the fire department in 1959, a time when the emergency technician position was nonexistent and, therefore, certainly not the norm. In 1976 when the emergency squad was instituted as a division of the Philadelphia Fire Department, this duty became an assignment which any fireman might expect; and, therefore, for those joining the fire fighters after 1976, emergency squad duty would most likely be a normal working condition. Whether or not emergency technician duty is an abnormal working condition for someone like the Claimant who joined before 1976, and who then, upon the forming of the squad, was asked to perform emergency duties, is not the question here. The complaint here is that the Claimant was ordered back to emergency duty after proving that he was medically unfit, and that the threat of having to return to this duty caused him psychic injury. After a careful reading of the briefs and the record, we conclude that the Claimant was not subjected to abnormal working conditions in 1984, because, although he was ordered back to the rescue squad, that order was rescinded by Deputy Commissioner Patton and

the Claimant was never required to do rescue squad duty after demonstrating his medical inability to do so.

The claimant received the order under discussion in September of 1984 and these orders were withdrawn in December of 1984. Exhibit C–2 supports the fact of this withdrawal. This exhibit is a memorandum addressed to the fire commissioner from the Claimant requesting a meeting between the Claimant and the Commissioner. In response, there is a notation on the face of the memorandum which states; "No participation in Programs as an EMT or as driver of squad." The notation is signed, "as per D. Comm. Patton" and initialed R.B.– BN–7. This evidence, absolutely contradicts the Claimant's brief [2] and very clearly indicates that the Claimant was not required to do EMT duty or serve as a driver in an emergency squad and, therefore, Claimant was not subjected to any of the working conditions which he alleges were abnormal.

The Claimant argues that even though he never returned to emergency technician duty the threat of having to do so caused his psychic injury. In examining this point, we note again that the Claimant was ordered to return to

---

**2.** The discrepancies in the record and briefs on this point are disconcerting. The Claimant's brief states, "Claimant requested to see Fire Commissioner Richman but received, instead, a Memorandum, dated December 6, 1984, refusing to reconsider the order to return to EMT work. (R.R. 22a–24a)." However, the pertinent parts of the record at N.T. 21 and 22 state the following:

A. I requested to see the fire commissioner, Richman, the new commissioner.
Q. Is this the memo, dated December 6, 1984?
A. Yes.
Mr. McDevitt: Do you want to mark that as C–2?
(CLAIMANT'S EXHIBIT, C–2, memo, 12–6–84, marked C–2 for identification).
BY MR. McDevitt:
Q. Now, did you actually see the commissioner or not?
A. No. It came back from Deputy Commissioner Patton.
Q. What came back?
A. The memo.
Q. What was the order?
A. He ordered—it says, no petitions [sic] in rescue squads or EMT or driver of the rescue squads, by order of the deputy commissioner.

this duty in September of 1984. He left the fire department in October of 1984 and the order was rescinded in December. There was approximately one month, from the time of the order to the time of his leaving, during which he may have felt threatened to return to that duty. However, we hold that as a matter of law that the anticipation of an abnormal working condition is not in itself an abnormal working condition. For the above reasons we affirm the order of the Board.

## ORDER

NOW, September 17, 1990, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.