**Robert A. LINSKEY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 11, 1997.

Decided Aug. 18, 1997.

Jack R. Famiglietti, Philadelphia, for petitioner.

Jonathan C. Meyers, Philadelphia, for respondent.

Before PELLEGRINI and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue before us is whether a firefighter/rescue worker who sustains psychological injury while working is entitled to collect workers' compensation benefits if he fails to prove that the working condition to which he was exposed was abnormal.

Robert A. Linskey (Claimant) appeals from the order of the Workers' Compensation Appeal Board (WCAB) that reversed the Workers' Compensation Judge's (WCJ) grant of benefits to Claimant. We affirm.

Claimant began working for the City of Philadelphia as a firefighter and rescue squad worker in 1981.[1] After joining the City's Fire Department (Department), Claimant spent three weeks undergoing rescue squad training. Claimant's first active duty assignment was with Engine 68. Rescue Squad 3 operated from the same facility. Claimant performed firefighting duties and approximately every five weeks would be scheduled for rescue squad duty with Rescue Squad 3. Rescue Squad 3 was ranked the fourth busiest in the city based on the number of runs.

Shortly after beginning work, Claimant responded in his rescue worker capacity to a call and found a man who had committed

---

1. In 1976, the Department created its emergency rescue squad, staffed by regular fire fighters. Recently, the Department began hiring separate staff for the emergency rescue squad.

suicide by hanging. Following this incident, Claimant began seeing a psychologist while continuing to perform his job duties. However, in 1982, Claimant became institutionalized for approximately thirty-two days.[2] After being released, Claimant continued to take Lithium, receiving follow-up care but returned to his time-of-injury position performing the same duties, including working with the rescue squad.

After working with Engine 68, Rescue 3 for approximately five and one-half years, Claimant requested a transfer to a slower station. Sometime in 1986, the Department transferred Claimant to Engine 11, Rescue 21 in South Philadelphia. Because the station was smaller and had fewer employees, Claimant was required to work the rescue squad every three to four weeks. According to Claimant, he remained depressed, even after switching to this new station. On November 17, 1986, Claimant became hospitalized because of suicidal tendencies and has not worked since.

Claimant filed for workers' compensation benefits which the Department denied.[3] A hearing was held at which time Claimant, Claimant's expert, John F. Brady, M.D., and Les Yost, President of the City Firefighters' Union testified. Employer introduced the testimony of Cynthia Hawthorne, Employer's Personnel Director and Timothy Michaels, M.D., a board-certified psychiatrist. Following the hearing, the WCJ credited Claimant and his expert's testimony over that of Employer's expert, holding that Claimant's employment as a rescue worker led to his psychological disability.

Employer appealed to the WCAB on the basis that the WCJ committed an error of law in holding that Claimant had sustained a compensable work-related psychiatric injury as he had not been subjected to abnormal working conditions. The WCAB reversed, holding that Claimant did not show abnormal working conditions caused the psychiatric injury relying on *Cadden v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 135 Pa.Cmwlth. 195, 579 A.2d 1378 (1990).

On appeal to this Court,[4] Claimant argues that the WCAB erred in reversing the WCJ's determination because Claimant had failed to establish abnormal working conditions caused his psychiatric injury.

A claimant has the burden of proof to recover workers' compensation benefits for a psychiatric injury under a heightened burden of proof. *Hershey Chocolate Co. v. Workmen's Compensation Appeal Board (Lasher)*, 546 Pa. 27, 682 A.2d 1257 (1996). Because of the highly subjective nature of psychiatric injuries, the occurrence of the injury and its cause must be adequately pinpointed. *Thomas v. Workmen's Compensation Appeal Board (Atlantic Refining Co.)*, 55 Pa.Cmwlth. 449, 423 A.2d 784 (1980). A claimant must prove by objective evidence that he sustained a psychiatric injury *and* that this injury is other than a subjective reaction to normal working conditions. *Hershey*. Once the claimant pinpoints the occurrence of injury, the second element is met when the claimant proves an "abnormal working" condition. *Id.* Abnormal working conditions can be shown by: 1) proving a sudden change or unusual event in the work place; 2) comparing the conditions of the claimant to those of his fellow employees performing similar duties; or 3) showing a change in duties coupled with an increase in responsibilities. *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund)*, 134 Pa.Cmwlth. 450, 578 A.2d 1016 (1990). Whether a claimant has been ex-

---

2. Claimant had a history of alcohol and drug abuse (48b, 57b), and had been hospitalized in 1972 for depression (26b).

3. Claimant apparently became blind in one eye on April 6, 1985, because of a non-work-related eye injury. He did not advise the Department of his condition because he was concerned that he would lose his job. (33b–34b.) The Department officially found Claimant permanently, partially disabled and unable to work in January 1987. (33b.) Claimant received an ordinary disability pension from the City because of this injury.

4. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

posed to abnormal working conditions is a question of law fully reviewable upon appeal. *Wilson v. Workmen's Compensation Appeal Board (Alcoa)*, 542 Pa. 614, 669 A.2d 338 (1996).

Although Claimant's witness, Les Yost, testified that Claimant had "seen a lot of things in a very short period of time which were very unusual and very scary ...," (Notes of Testimony (N.T.) of August 18, 1992 Deposition at 8), Mr. Yost also testified that these things were "common practice" for a rescue squad worker. (*Id.* at 11.) Thus, the WCAB did not consider Claimant's working conditions to be abnormal.

Although Claimant experienced a traumatic incident, the occurrence was not a sudden change or unusual event in the work place and was common place for rescue workers. Claimant, in fact, testified that his duties could include many different things: "resuscitation, babies being born, knifings [sic], gunshot wounds, hangings, suicides, anything under the sun." (N.T. of June 6, 1988 hearing at 5–6.) Thus, we agree with the WCAB that Claimant demonstrated neither a sudden change of events nor that he was exposed to situations different than his co-workers.

■ Next, Claimant asserts that when he transferred from one squad to the other that the changes constituted abnormal working conditions. Claimant claims that because Rescue 21 required him to work as a rescue worker every three to four weeks and had inferior equipment that abnormal working conditions existed. While a change of duties coupled with an increase of responsibility can constitute "abnormal working conditions," *Berardelli*, the claimant must establish that the increased work load was unusual for the position. *Hershey*. In making this evaluation, we must compare the work conditions cited by Claimant as abnormal and the work conditions of fellow employees performing similar duties. Because workloads for all employees apparently were the same, Claimant's own alleged increased workload could not constitute an abnormal working condition. *Id.*

Claimant, however, argues that the question actually is whether the conditions at issue are unusually stressful for the particular job at issue. *Lukens Steel Co. v. Workmen's Compensation Appeal Board (Price)*, 149 Pa.Cmwlth. 177, 612 A.2d 638 (1992). Claimant notes that appellate courts have yet to address when a rescue squad worker's job duties are considered abnormal working conditions. Claimant asserts that he was hired as a firefighter and thus, the rescue job duties, which were more stressful, became abnormal working conditions.

While no specific decision sets forth what abnormal working conditions are for emergency rescue workers, the language of *Cadden*, is instructive. In *Cadden*, we held that for firefighters who joined the Philadelphia Fire Department after 1976, emergency squad duties were most likely to be normal working conditions as it was part of being a fireman's duty, as was the case here.

■ Where the employment is highly stressful such as working as a firefighter or rescue worker, benefits must be denied where the particular employee is not under any more stress than expected of that profession. *Wilkes–Barre v. Workmen's Compensation Appeal Board (Swan)*, 130 Pa. Cmwlth. 186, 567 A.2d 771 (1989), *appeal denied* 527 Pa. 620, 590 A.2d 760 (1990). Pennsylvania law does not permit a claimant to recover for an emotional disorder caused by the claimant's response to normal working conditions. *Id.* Thus, we hold that the WCAB correctly determined that Claimant was not entitled to benefits as he failed to demonstrate abnormal working conditions.

Accordingly, we affirm.

### ORDER

AND NOW, this 18th day of August, 1997, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.