**Debra AUMENT, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (FLEXSTEEL INDUSTRIES, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 9, 1998.
Decided Nov. 25, 1998.

Scott E. Albert, Mount Joy, for petitioner.

John L. Kwasneski, Pittsburgh, for respondent.

Before DOYLE and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Debra Aument (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board that reversed a workers' compensation judge's (WCJ) grant of benefits to Claimant for a psychic injury. We affirm.

Claimant worked for Flexsteel Industries, Inc. (Employer) for more than twelve years in various capacities, including a five-year period as a senior sales coordinator. In June of 1994, Claimant was promoted to the position of inside sales administrator. In her new position, Claimant continued to be responsible for her prior duties but also assumed additional ones. In November 1994, Claimant experienced an anxiety attack at work. At the time of that episode, she began to hyperventilate, her vision became blurry, and her legs and face went numb. Following this anxiety attack, Claimant sought treatment with Robert K. Aichele, Jr., D.O. Claimant also sought treatment with Arthur Goldman, Ph.D., beginning in February 1995.[1] After February 7, 1995, Claimant did not return to her new position.

On April 6, 1995, Claimant filed a claim petition, alleging that as of February 7, 1995, she became disabled, sustaining injuries in the nature of "anxiety/anxiety syndrome and clinical depression" as a result of her work for Employer. She further alleged that over time she was assigned more duties to the point where she could no longer function. Claimant also alleged that although she notified Employer of her situation, she was not provided with assistance in handling her new job responsibilities. In its answer, Employer denied Claimant's allegations.

Hearings were held before a WCJ, at which time Claimant testified on her own behalf. She also presented the deposition testimony of both Dr. Aichele and Dr. Goldman. Employer presented the testimony of Thom Fecteau, Employer's general manager, the deposition testimony of Lee Fautsch, Employer's regional sales manager, and the deposition testimony of Abram M. Hostetter, M.D., who examined Claimant for this litigation.

The WCJ's seventy-seven findings of fact set forth the testimony of the various witnesses, which is summarized as follows. Claimant testified that on a regular basis she worked more than forty hours per week, that she had more responsibilities in her new position than in her previous position, including expediting the shipping for many of Employer's international and government accounts, and that she supervised five employees. Claimant testified that she had seventeen areas of responsibility prior to her promotion and that subsequent to the promotion she had four more areas of responsibility all without any assistance provided by Employer. Claimant further testified that, unlike other employees, she regularly took work home in the evenings and on weekends, but was not given additional compensation. Claimant also testified that when comparing her duties with those of her counterpart in the same position in Employer's Iowa plant, she had many more responsibilities.

Claimant further testified that in the course of a day she fielded at least seventy phone calls, each needing her to do follow-up work. In September and October of 1994, one of Claimant's subordinates was off work for six weeks, requiring Claimant to take on additional responsibilities. Claimant also performed tasks beyond the scope of her job description, including answering questions concerning work posed by many of the other employees in Employer's work force. She also acted as an interior decorator, as a furniture sales person and trained new employees. Claimant further testified that although she delegated work, Employer requested her to be selective so as not to overwhelm her subordinates.

Claimant also related incidents involving the employee who had been absent for six weeks. After Claimant's episode at work in November of 1994, that employee informed others that Claimant had suffered a nervous breakdown. When asked to refrain from discussing the incident, the other employee responded in a volatile manner, calling Claimant names and leaving work for a number of days. Claimant also testified that on another occasion that employee pushed Claimant against a wall, but in response to Claimant's report Mr. Fautsch laughed and took no further action.

Mr. Fecteau testified that the new position was created for Claimant because Employer needed a knowledgeable in-house administra-

1. Claimant had previously treated with Dr. Goldman for a period of time in 1987.

tor who could handle the sales department in the absence of the sales manager. Prior to the creation of the new position, other employees in the sales department performed the duties undertaken by Claimant. Mr. Fecteau further testified that Claimant continued to perform her original duties in addition to the new ones. He also acknowledged that he was aware of Claimant's concerns, particularly, the fact that the sales department was understaffed, but due to Employer's hiring freeze no solution could be readily implemented. The hiring freeze also impacted the workload when a twenty-percent increase in sales occurred as a result of an expanded territory. Although Mr. Fecteau listed the various employees' work hours, attempting to prove that Claimant's work schedule was in line with that of other employees, the WCJ did not accept this testimony as credible, finding in fact that Claimant worked more hours than other employees at her place of employment. Mr. Fecteau also recognized that the animosity between Claimant and the employee who was off work for six weeks impacted Claimant's workload. He also acknowledged that Claimant assumed responsibilities for duties outside her job description.

Claimant's immediate supervisor, Mr. Fautsch, provided testimony that essentially covered the same information testified to by Mr. Fecteau. He indicated that he was aware that Claimant believed her workload was overwhelming, that she performed her prior duties in addition to her new responsibilities, which included a primary duty to service Employer's largest and most important account. Mr. Fautsch agreed that the hiring freeze and Employer's lack of profitability made it impossible to hire additional employees to alleviate Claimant's workload. According to Mr. Fautsch, Claimant's performance ratings indicated that from 1991 through 1993 she exceeded expectations and in 1994 she met most/all expectations. He recognized Claimant's strong relationships with other employees and customers, noting the exception concerning the relationship with one employee, which he described as involving petty arguments. This characterization of Claimant's relationship with this one employee was not accepted by the WCJ, who found the shoving incident rose to the level of an assault.

With regard to the medical testimony, Dr. Goldman diagnosed Claimant as suffering from clinical depression brought about by the stress at work in connection with Claimant's promotion. Dr. Aichele testified that Claimant's anxiety and depression stemmed from Claimant being overwhelmed at work as a result of the addition of more and more responsibility. As for Dr. Hostetter's testimony, the WCJ found that he disagreed with Claimant's doctors' diagnosis. Dr. Hostetter did not believe Claimant suffered from depression, anxiety or panic-attack disorders that were in anyway the result of Claimant's working conditions.

The WCJ found credible the testimony of Claimant and her two physicians. The WCJ found Dr. Hostetter not credible, and accepted the testimony of Mr. Fecteau and Mr. Fautsch only to the extent the WCJ so indicated in her findings of fact. The WCJ then pinpointed the incidents she found to be actual, extraordinary and not perceived or imagined events that were responsible for claimant's injuries and were considered by the WCJ as abnormal working conditions. These incidents included: 1) the episode with the employee who pushed Claimant into the wall coupled with Mr. Fautsch's reaction and his failure to investigate or take any action; 2) the hysterical reaction by the same employee when asked to not discuss Claimant's panic attack; 3) Claimant's work schedule of at least fifty hours per week in contrast to the forty hours per week expected of other employees; 4) Claimant's additional responsibilities as compared to her counterpart at the Iowa location; 5) Claimant's performance of tasks beyond those in her job description; and 6) failure by Employer to respond to Claimant's request for additional help or in any way attempt to alleviate Claimant's workload by hiring additional help or at a minimum allowing Claimant to delegate more work.

Based on these findings the WCJ concluded that Claimant had carried her burden of proving her entitlement to workers' compensation benefits. However, it is unclear in the

WCJ's recitation of her conclusion whether she placed Claimant within the physical/mental category or the mental/mental category for a psychological injury.

Employer appealed to Board, which reversed. Relying on *Hershey Chocolate Co. v. Workmen's Compensation Appeal Board (Lasher)*, 546 Pa. 27, 682 A.2d 1257 (1996), and *Philadelphia Newspapers, Inc. v. Workmen's Compensation Appeal Board (Guaracino)*, 544 Pa. 203, 675 A.2d 1213 (1996), the Board held that Claimant's claim fell within the mental/mental category but that Claimant failed to prove abnormal working conditions. The Board also relied on the *Hershey* court's pronouncement that a promotion coupled with added responsibility does not constitute abnormal working conditions. Additionally, the Board discussed the medical testimony, concluding that Claimant's doctors' testimony believed by the WCJ was not equivocal, but was insufficient to carry Claimant's burden to prove abnormal working conditions.

On appeal to this Court,[2] Claimant argues: 1) that she proved by a preponderance of the evidence that she was subjected to abnormal working conditions, 2) that she presented objective evidence that she sustained a psychic injury that was other than a subjective reaction to normal working conditions, and 3) that the Board disregarded the WCJ's findings of fact.

Initially, we note that psychic injuries have been broken down into three discrete areas, i.e., psychological stimulus causing physical injury (mental/physical), physical stimulus causing psychic injury (physical/mental), and psychological stimulus causing psychic injury (mental/mental). *Volterano v. Workmen's Compensation Appeal Board (Allied Corp.)*, 149 Pa.Cmwlth. 222, 613 A.2d 61 (Pa.Cmwlth. 1992), *aff'd*, 536 Pa. 335, 639 A.2d 453 (1994). Despite the WCJ's failure to clarify whether she granted Claimant's benefits pursuant to either the physical/mental or mental/mental category, we agree with the Board's characterization that the mental/mental area is ap-

propriate under the circumstances here. Additionally, we note that despite Claimant's statement in her brief that she falls within the physical/mental category, her arguments and her reliance on cases that discuss the mental/mental category evidence her acquiescence in this regard.

We begin by quoting the Supreme Court's discussion of the law applicable to mental/mental category cases set forth in *Hershey*.

To recover workers' compensation benefits for a psychic injury, a claimant must prove by objective evidence that he has suffered a psychic injury and that such injury is other than a subjective reaction to normal working conditions. *Martin v. Ketchum, Inc.*, 523 Pa. 509, 568 A.2d 159 (1990).

'[E]ven if a claimant adequately identifies actual (not merely perceived or imagined) employment events which have precipitated psychiatric injury, the claimant must still prove the events to be abnormal before he can recover.' *Wilson v. Workmen's Compensation Appeal Board (Aluminum Company of America)*, 542 Pa. 614, 669 A.2d 338 (1996), quoting *Antus v. Workmen's Compensation Appeal Board*, 155 Pa.Cmwlth. 576, 586, 625 A.2d 760, 766 (1993), aff'd. per curiam, 536 Pa. 267, 639 A.2d 20 (1994).

. . . .

'[P]sychic injury cases are highly fact-sensitive and for actual work conditions to be considered abnormal, they must be considered in the context of the specific employment.' *Id.*, 542 Pa. at 624, 669 A.2d at 343 (citation omitted). Appellate review of the [WCJ's] findings of fact is limited to a determination of whether the findings are supported by the evidence as a whole. Where no additional testimony is taken before the Board, the findings will be overturned only if arbitrary and capricious. Whether the findings of fact support a conclusion that the claimant has been ex-

---

**2.** Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the administrative Agency Law, 2 Pa.C.S. § 704. *Philadelphia Newspapers*.

posed to abnormal working conditions is a question of law, however, that is fully reviewable on appeal. *Id.* 542 Pa. at 624, 669 A.2d [at] 343.

*Hershey,* 546 Pa. at 33–34, 682 A.2d at 1260.

Relying on *Linskey v. Workers' Compensation Appeal Board (City of Philadelphia),* 699 A.2d 818 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 550 Pa. 711, 705 A.2d 1312 (1998), Claimant first argues that a change of duties with an increase of responsibilities can constitute abnormal working conditions. Claimant points to specific facts found by the WCJ to support this contention that she was exposed to abnormal working conditions. These facts include Employer's failure to provide additional help, Employer's failure to take any action and its derisive response concerning the abusive conduct of a subordinate and Employer's expectation that Claimant perform tasks outside her job description.

By enumerating the *Linskey* court's three-way test to show abnormal working conditions, Claimant contends that she has provided evidence that fits each prong. The three ways are: 1) proof of a sudden change or unusual event in the work place, 2) comparison of the conditions of the claimant to those of fellow employees performing similar duties, or 3) a showing of a change in duties coupled with an increase in responsibilities. *Id.*

■ The episodes with Claimant's subordinate are events that might possibly be considered abnormal working conditions. However, the *Philadelphia Newspapers* court opined that "the work environment is a microcosm of society. It is not a shelter from rude behavior, obscene language, incivility, or stress." *Id.* at 215, 675 A.2d at 1219. The court then concluded that where evidence of the offensive behavior shows it to be an isolated event, it cannot establish abnormal working conditions. Thus, following the dictates of *Philadelphia Newspapers* and despite the WCJ's finding that the shoving of Claimant into the wall was an assault, we cannot conclude that abnormal working conditions were established based only upon these two isolated incidents involving Claimant's subordinate.

■ As for evidence comparing Claimant's job with that of an employee with the same job title in Employer's Iowa plant, we are compelled to reach the same conclusion as that of the Board. We reviewed the WCJ's finding that Claimant had more responsibilities that her counterpart and the Board's conclusion that Claimant had failed to prove abnormal conditions by making this comparison. We also examined Claimant's testimony on this point. Claimant explained that although her counterpart had the same title, the Iowa plant had a larger staff and sales department resulting in different responsibilities. Claimant further explained that upon accepting her promotion, she was told to start with her counterpart's job description and add her additional duties to create a new job description. When asked who had more responsibilities, Claimant responded that she did. Additionally, we reviewed the copies of the two job descriptions in the record, noting that other than the more general statements concerning primary functions and general responsibilities, the specific job duties appear quite different. Therefore, we conclude that Claimant has failed to show a comparable job against which to measure her responsibilities and prove abnormal working conditions. The same job title is insufficient.

The third prong of the *Linskey* test requires proof of a change of duties with an increase in responsibilities. Clearly, Claimant here proved that changes occurred; however, they arose in the context of a promotion, which is a situation controlled by *Hershey.*

In *Hershey,* the claimant was promoted after a merger of sales districts. She filed a claim petition seeking benefits for depression caused by the change in her working conditions. Although the Supreme Court recognized that the claimant could identify actual events around the time she was promoted, the Court concluded that the claimant's evidence was insufficient to establish that her psychic injury was other than a subjective reaction to normal working conditions. The Court held that "[c]hanged working conditions are not synonymous with 'abnormal working conditions,' especially in the context

of a promotion." *Id.* at 42, 682 A.2d at 1264. Additionally, the Court stated that:

> Where an increase or change in workload and responsibilities accompanies a promotion or job change, a claimant must establish that the increase or change is abnormal. Furthermore, whether actual work conditions are to be considered as abnormal following a promotion must be determined by reference to the job that the claimant has advanced to, not by comparison to the claimant's former responsibilities.

*Id.* at 42–43, 682 A.2d at 1264–65.

■ The evidence here does not provide a basis upon which this Court can conclude that Claimant proved a change of duties with an increase in responsibilities that are not coupled with her promotion. Despite the WCJ's finding that Claimant was told not to delegate work so as to overwhelm her subordinates, Claimant's inability to delegate does not equate with abnormal working conditions. Claimant acknowledged the hiring freeze and Employer's employment of an additional worker to relieve Claimant from some of her workload. Furthermore, Claimant's testimony believed by the WCJ relating her performance of additional duties outside her job description, her longer hours, her confrontations with other employees and her undertaking of duties for an absent employee does not prove that abnormal working conditions existed. These additional responsibilities were part of her new supervisory job. They are not abnormal working conditions.

■ Claimant's final argument is that the Board disregarded the WCJ's findings of fact. We disagree. Because the question concerning what constitutes abnormal working conditions is a matter of law fully reviewable on appeal, *Hershey,* the Board can arrive at a conclusion that differs from the WCJ's conclusion. *Carmen Paliotta General Construction v. Workmen's Compensation Appeal Board (Tribuzio),* 107 Pa.Cmwlth. 143, 528 A.2d 274 (Pa.Cmwlth.1987).[3] The Board did not override or make findings different from the WCJ's findings. It merely arrived at a different conclusion. This is not an error.

For the reasons stated above, we are constrained to affirm the Board's order.

## ORDER

NOW, November 25, 1998, the order of the Workers' Compensation Appeal Board, at No. A97–1085, dated April 15, 1998, is affirmed.

---

3. While findings of fact and credibility determinations are entirely within the province of the WCJ, the legislature has vested in the Board the final authority to make conclusions of law subject to appeal to this Court. *Carmen Paliotta.*