**Richard ISBELL, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DEPARTMENT OF CORRECTIONS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 18, 2000.

Decided May 3, 2000.

---

E.J. Julian, Washington, for petitioner.

Roy F. Walters, Jr., Pittsburgh, for respondent.

Before DOYLE, President Judge, and FRIEDMAN, J., and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

Richard Isbell (Claimant) appeals from an order of the Workers' Compensation Appeal Board (WCAB), affirming the decision of a workers' compensation judge (WCJ) to deny Claimant's claim petition. We affirm.

Claimant worked for the Pennsylvania Department of Corrections (Employer) as a corrections officer at Western Penitentiary. On or about November 16, 1995, Claimant filed a claim petition, alleging that he sustained a work-related psychological injury on April 19, 1995. Employer filed an answer denying the material allegations contained in the claim petition, and hearings took place before a WCJ.

In support of his petition, Claimant testified on his own behalf. Claimant did not identify any one particular incident but, rather, contended that the working conditions, generally, caused him stress at work. Claimant stated that white corrections officers discriminated against him at work but conceded that he was harassed by African American officers as well. Claimant testified that inmates fought with each other and threatened corrections officers and that corrections officers also fought with each other. Claimant stated that he felt that he could not trust his co-workers in potentially life-threatening situations. Claimant also felt that his moral values had declined because he was required to remove personal items from inmates' cells and because other corrections officers requested that he falsify reports after inmates were abused.[1] In addition, Claimant testified about a verbal confrontation that he had with a sergeant in April 1995. (WCJ's Findings of Fact, Nos. 8, 10.)

Claimant acknowledged that his working conditions were normal for corrections officers at Western Penitentiary. In fact, prior to starting his job, Claimant knew that he would be exposed to racial remarks, profanity and verbal abuse. Then, during his training, Claimant witnessed other senior corrections officers being exposed to such conditions on a daily basis. Claimant also admitted that, with the exception of being elevated from trainee status, his job duties remained the same over the two years that he worked for Employer. Claimant acknowledged that those duties, which consisted of observing inmates and escorting them to and from their cells, were the same duties required of all corrections officers. Furthermore, Claimant admitted that he had never been assaulted by other corrections officers and had had only minor altercations with inmates. (WCJ's Findings of Fact, No. 8.)

In addition to his testimony with regard to work-related stress, Claimant testified about personal problems associated with his life outside of work. During most of 1995, Claimant and his wife were separated. They subsequently divorced, and this led to financial problems associated with child support; Claimant also was experiencing financial problems with the Internal Revenue Service. Moreover, Claimant's

1. Claimant could not remember the names of those officers.

father and brother had problems with alcohol, and Claimant's brother committed suicide. During cross-examination, Claimant also was confronted with hospital records which showed that Claimant had suffered from depression his entire life. (WCJ's Findings of Fact, No. 9.)

To support his position, Claimant also presented the testimony of his treating psychiatrist, Carlo Sirri, M.D., who first examined Claimant on July 13, 1995. Dr. Sirri diagnosed Claimant as suffering from major depressive disorder, which was caused by stressful working conditions as well as economic difficulties and marital problems. Dr. Sirri emphasized that Claimant had crying spells and sleep deprivation and that Claimant's major depressive disorder was disabling. (WCJ's Findings of Fact, No. 11.) Dr. Sirri treated Claimant until August 1997, and, although Dr. Sirri believed that Claimant's condition had improved, Dr. Sirri believed that Claimant still was unable to return to gainful employment. Dr. Sirri anticipated that Claimant eventually would be able to return to some type of active employment; however, he recommended that Claimant not return to his previous job as a corrections officer. (WCJ's Findings of Fact, No. 12.)

On cross-examination, Dr. Sirri agreed that Claimant frequently complained about financial problems, and Dr. Sirri highlighted Claimant's history of drug and alcohol abuse. Significantly, Dr. Sirri acknowledged that Claimant had many non-work-related stresses in his life that substantially contributed to Claimant's depression and agreed that Claimant exhibited a subjective reaction to his work environment. (WCJ's Findings of Fact, Nos. 13–14.)

In defense of the claim petition, Employer presented the testimony of David Spence, M.D., a Board certified psychiatrist, who examined Claimant on April 30, 1996. Based on his examination and an extensive review of Claimant's medical records and prior testimony, Dr. Spence diagnosed Claimant as suffering from a mixed personality disorder. Dr. Spence found Claimant's history to be critical to this diagnosis. Dr. Spence opined within a reasonable degree of medical certainty that Claimant was suffering from a "subject protest" to the normal stresses of working in a prison environment and that Claimant was simply ill equipped to deal with the pressures of an ongoing job, or relationships in general, due to his personality flaws. Dr. Spence acknowledged that, as of June 1996, Claimant was completely disabled from any type of work; however, Dr. Spence never attributed Claimant's disability to abnormal working conditions. (WCJ's Findings of Fact, No. 18.)

Employer also presented the testimony of Robert Holzer. Holzer had worked for Employer for approximately twenty-six years, and, although Holzer did not know Claimant personally, Holzer served as a Major at Western Penitentiary during the time period in which Claimant worked there. As a Major, Holzer was responsible for handling complaints filed by corrections officers. Holzer testified that he never received any formal complaint from Claimant, but he addressed the workplace stresses that Claimant now contended caused his disability. Holzer could recall only one occasion when a problem of corrections officers falsifying reports arose, and Holzer stated that he knew of only one occasion when inmates were abused. Moreover, Holzer testified that corrections officers fought among themselves on rare occasions and were severely punished for this behavior. Holzer further acknowledged that corrections officers were required to remove personal belongings from inmates' cells but explained that this was done to remove potential weapons and contraband. Holzer verified that social cliques and racial tension existed in the prison environment, but he stressed that it never got to the point where daily operations were jeopardized. Holzer also conceded that profane language and violence occurred frequently in Western Penitentia-

ry but stated that this was an unavoidable job condition for all corrections officers. (WCJ's Findings of Fact, Nos. 20–24.)

After hearing all of the evidence presented, the WCJ found Claimant credible only insofar as he testified that he was subjected to the same violence and profane language normally associated with working in a prison. (WCJ's Findings of Fact, No. 25.) The WCJ found Holzer to be credible and convincing that Claimant was not subjected to abnormal working conditions. Regarding the medical testimony, the WCJ found that Dr. Sirri's testimony was equivocal and lacked legal competence to support Claimant's claim for benefits; however, the WCJ found Dr. Spence to be credible and convincing that Claimant did not sustain a work-related psychological injury. (WCJ's Findings of Fact, Nos. 25–29.) Thus, the WCJ denied Claimant's claim petition, concluding that Claimant failed to meet his burden of proving that he sustained a work-related psychological injury or that he had been subjected to abnormal working conditions. (WCJ's Conclusions of Law, Nos. 2–4). The WCAB affirmed, and Claimant now appeals to this court.

On appeal,[2] Claimant argues that the WCJ erred as a matter of law in determining that Claimant failed to prove a work-related psychological injury. Claimant contends that his disabling psychiatric problem was caused by his reaction to abnormal working conditions. We disagree.

2. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).

4. The question of whether working conditions are "abnormal" is a mixed question of law and fact and is fully reviewable by this court.

Psychiatric disability caused by work-related stress may be compensable under section 301(c)(1) of The Pennsylvania Workers' Compensation Act[3] (Act), but the degree of proof required in such cases is quite high. *Antus v. Workmen's Compensation Appeal Board (Sawhill Tubular Division, Cyclops Industries, Inc.)*, 155 Pa.Cmwlth. 576, 625 A.2d 760 (1993), *aff'd*, 536 Pa. 267, 639 A.2d 20 (1994). A claimant's subjective reaction to normal working conditions is not compensable under the Act. *Moonblatt v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 85 Pa.Cmwlth. 128, 481 A.2d 374 (1984). In determining what constitutes "normal working conditions," we view the conditions in the context of the work involved.[4] *City of Scranton v. Workmen's Compensation Appeal Board (Hart)*, 136 Pa.Cmwlth. 483, 583 A.2d 852 (1990), *appeal denied*, 528 Pa. 625, 597 A.2d 1154 (1991). Thus, if the claimant's job is the type of work typically associated with a high amount of stress, such as a police officer or a firefighter, the claimant must prove that his employment was unusually stressful **for that type of job.** *Id.*; *see also Linskey v. Workers' Compensation Appeal Board (City of Philadelphia)*, 699 A.2d 818 (Pa.Cmwlth.1997), *appeal denied*, 550 Pa. 711, 705 A.2d 1312 (1998) (holding that the claimant, a firefighter/rescue-worker, failed to prove that he had been exposed to abnormal working conditions where he responded to a call and found a man who had committed suicide by hanging).

*Clowes v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 162 Pa.Cmwlth. 583, 639 A.2d 944 (1994), *appeal denied*, 543 Pa. 697, 670 A.2d 144 (1995). "Abnormal working conditions" can be proven by one of two ways, either by pinpointing a single work incident or by showing a combination of events that, when taken together, make the work performance unusually stressful for that job. *City of Scranton v. Workmen's Compensation Appeal Board (Hart)*, 136 Pa.Cmwlth. 483, 583 A.2d 852 (1990), *appeal denied*, 528 Pa. 625, 597 A.2d 1154 (1991).

■ There can be little doubt that corrections officers experience a high amount of stress in their jobs. Therefore, Claimant bears the burden of proving that the conditions of his job at Western Penitentiary were *unusually* stressful when compared to the working conditions of other corrections officers. Claimant has not met that burden here. According to the credible testimony of Holzer and common sense, a certain amount of violence and profanity are an unfortunate consequence of the prison atmosphere. Indeed, Claimant himself admitted that exposure to violence and profanity was common to all corrections officers, and, therefore, his situation was not unique.[5]

■ Moreover, the medical testimony presented by both Claimant and Employer establishes that Claimant's stress and depression stem, not from abnormal working conditions, but from his subjective reaction to normal working conditions. Dr. Sirri admitted that Claimant had many non-work-related stresses in his life that substantially contributed to Claimant's depression and agreed that Claimant exhibited a subjective reaction to his work environment. Dr. Spence testified that Claimant was suffering from a "subject protest" to normal stresses of working in a prison environment and that Claimant simply was ill equipped to deal with the pressures of an ongoing job, or relationships in general, due to his personality flaws. Because this evidence supports the WCJ's conclusion that Claimant failed to meet his burden of proving a work-related psychological injury caused by abnormal working conditions, we affirm.

ORDER

AND NOW, this 3rd day of May, 2000, the order of the Workers' Compensation

Appeal Board, dated July 14, 1999, is hereby affirmed.

---

5. One could argue that inmate abuse and the falsification of documents to hide inmate abuse is not normal even in prison life. However, we need not reach that issue because the WCJ did not credit Claimant's testimony regarding such occurrences. Instead, the WCJ found the testimony of Holzer to be credible that these occurrences were rare and were punished severely.